## No. 24-1227

---

In the United States Court of Appeals
for the Sixth Circuit

———————————

# United States of America,

Plaintiff-Appellee,

v.

# Matthew Mercer-Kinser,

Defendant-Appellant.

———————————

On Appeal from the United States District Court
for the Eastern District of Michigan
No. 19-cr-20772 (Hon. Terrence G. Berg)

———————————

## Brief for the United States

———————————

Dawn N. Ison
United States Attorney

Erin S. Shaw
Assistant United States Attorney
Eastern District of Michigan
211 West Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9182
erin.shaw@usdoj.gov

# Table of Contents

Table of Authorities ................................................................ iii

Oral Argument Is Unnecessary ............................................... v

Introduction ........................................................................... 1

Issues Presented ..................................................................... 2

Statement of the Case ............................................................ 3

A.  Mercer-Kinser receives child pornography while serving the final days of his prior child exploitation sentence at a halfway house. ........................................................... 3

B.  The district court denies Mercer-Kinser's pretrial motions. ........... 6

C.  The jury convicts. ........................................................ 9

Summary of the Argument .................................................... 20

Argument ............................................................................. 22

I.  This Court should affirm the denial of Mercer-Kinser's motion for judgment of acquittal. ................................. 22

   A.  Mercer-Kinser's new sufficiency argument on appeal is waived. ........................................................... 22

   B.  The United States presented sufficient evidence to support Mercer-Kinser's conviction. .................... 23

II.  The district court acted within its discretion in admitting text messages between Mercer-Kinser and his preteen daughter. ........................................................ 29

   A.  The messages were admissible as res gestae evidence. ....... 29

B.     The messages were also admissible under Rule 404(b) to show intent, absence of mistake, or absence of accident......31

C.     Any error was harmless. .......................................................35

III.     The district court correctly denied the motion to dismiss the indictment on free speech grounds. ................................................36

Conclusion ........................................................................................40

Certificate of Compliance with Rule 32(a)............................................41

Certificate of Service ...............................................................................42

Relevant District Court Documents........................................................43

ii

# Table of Authorities

## Cases

*Doe v. Boland*, 698 F.3d 877 (6th Cir. 2012).....................................36, 37

*Jackson v. Virginia*, 443 U.S. 307 (1979)...............................................24

*New York v. Ferber*, 458 U.S. 747 (1982) .........................................36, 37

*United States v. Brown*, 25 F.3d 307 (6th Cir. 1994).......................37, 38

*United States v. Chance*, 306 F.3d 356 (6th Cir. 2002) .........................23

*United States v. Clark*, 24 F.4th 565 (6th Cir. 2022).............................28

*United States v. Clay*, 667 F.3d 689 (6th Cir. 2012)...............................30

*United States v. Curtin*, 489 F.3d 935 (9th Cir. 2007)............................39

*United States v. Daniels*, 653 F.3d 399 (6th Cir. 2011)..........................25

*United States v. De Oleo*, 697 F.3d 338 (6th Cir. 2012).............30, 35, 36

*United States v. Edwards*, 813 F.3d 953 (10th Cir. 2015).....................33

*United States v. Emmons*, 8 F.4th 454 (6th Cir. 2021)...........................24

*United States v. Hall*, 202 F.3d 270 (6th Cir. 2000) .........................29, 34

*United States v. Hardy*, 228 F.3d 745 (6th Cir. 2000)............................30

*United States v. Hardy*, 643 F.3d 143 (6th Cir. 2011).......................29, 35

*United States v. Harvey*, 653 F.3d 388 (6th Cir. 2011)...........................35

*United States v. Hentzen*, 638 F. App'x 427 (6th Cir. 2015).......26, 28, 29

*United States v. Jankowski*, No. 23-1404,
    2024 WL 4554690 (6th Cir. Oct. 23, 2024) ....................................23

## Cases

*United States v. Kussmaul*, 987 F.2d 345 (6th Cir. 1993) ...................... 26

*United States v. LaVictor*, 848 F.3d 428 (6th Cir. 2017) ....................... 24

*United States v. Marrero*, 651 F.3d 453 (6th Cir. 2011) ........................ 36

*United States v. Martinez*, 430 F.3d 317 (6th Cir. 2005) ............ 24, 29, 30

*United States v. Persaud*, 866 F.3d 371 (6th Cir. 2017) ...................... 24

*United States v. Porter*, 886 F.3d 562 (6th Cir. 2018) ........................... 23

*United States v. Rolling*, No. 23-1045, 2024 WL 4512532
(6th Cir. Oct. 17, 2024) .................................................... 23

*United States v. Roman*, 795 F.3d 511 (6th Cir. 2015) .......................... 28

*United States v. Weathers*, 169 F.3d 336 (6th Cir. 1999) ...................... 28

*United States v. Wright*, 774 F.3d 1085 (6th Cir. 2014) ........................ 24

## Statutes

18 U.S.C. § 2252 ................................................................... 38

18 U.S.C. § 2252A(a)(2) ......................................... 6, 24, 38, 39

18 U.S.C. § 2252A(a)(5)(B) ....................................................... 6

## Rules

Federal Rule of Criminal Procedure 29 ........................................ passim

Federal Rule of Evidence 404(b) ................................................. passim

Federal Rule of Evidence 414 ..................................................... passim

# Oral Argument Is Unnecessary

Oral argument is unnecessary because the facts and legal arguments are adequately presented in the briefs and record. The decisional process would not be significantly aided by oral argument.

# Introduction

While serving the final days of a 12½-year child pornography sentence at a halfway house, defendant Matthew Mercer-Kinser badgered his preteen daughter with text messages about his views concerning the propriety of sex acts between children and adults. After reading Mercer-Kinser's disturbing communications, a concerned relative contacted law enforcement. When federal investigators eventually searched Mercer-Kinser's phone, they learned that he had been using it to receive more child pornography. Mercer-Kinser testified at trial, and readily admitted that he had "a sexual fetish" of "being into children." The jury found him guilty.

Mercer-Kinser has not identified any valid ground to overturn that conviction. The evidence was more than sufficient to support his verdict. His text messages with his daughter were admissible as background res gestae evidence and under Federal Rule of Evidence 404(b) to show intent, absence of mistake, or absence of accident. And the First Amendment does not protect Mercer-Kinser's child pornography. The judgment should be affirmed.

# Issues Presented

I.  *Sufficiency of the evidence.* Was there sufficient evidence to support the jury's verdict?

II. *Text messages.* Did the district court act within its discretion when it admitted evidence of text messages from the defendant to his daughter, where he discussed his views concerning child pornography and sexual activity between children and adults?

III. *First Amendment.* Did the district court correctly deny the defendant's motion to dismiss the indictment because child pornography is not protected under the First Amendment?

# Statement of the Case

**A.    Mercer-Kinser receives child pornography while serving the final days of his prior child exploitation sentence at a halfway house.**

Mercer-Kinser's first encounter with law enforcement concerning the sexual exploitation of children happened over 15 years ago, when he was serving in the Army, and stationed on a military base in Georgia. (R.1: Complaint, 3). While chatting online with an Australian undercover officer, Mercer-Kinser bragged that he was molesting his 2½-year-old son, and engaging in sexual relations with other family members, including a 5- or 6-year-old niece. (*Id*., 4). Mercer-Kinser's son, who was born in 2005, was approximately 2½ at the time of the undercover conversation. (*Id*.).

Mercer-Kinser amassed thousands of images of child pornography via the internet, stored on his laptop and external hard drives. (*Id*., 3). His collection included numerous images depicting the violent rape and sexual exploitation of babies and small children. (*Id*.). When he moved home to Michigan, he brought his collection with him. Federal investigators soon apprehended him.

3

He pleaded guilty to transportation of child pornography in the United States District Court for the Eastern District of Michigan. (R.79: PSR, 734 (¶ 49)). In June 2009, the district court sentenced him to 151 months in federal custody. (*Id*.). By that time, the mother of Mercer-Kinser's young son was pregnant with Mercer-Kinser's daughter, who was born in August. (*Id*., 738 (¶ 61)).

Almost a decade later, in July 2019, the Bureau of Prisons placed Mercer-Kinser in a Detroit residential reentry center to finish serving his sentence. (*Id*., 723 (¶ 10)). One of the first things he did was purchase a cell phone. (R.85: Tr., 1238).

He began texting his daughter. She was about to celebrate her 10th birthday. Like many preteen girls, she had her own smartphone. Hers received service under an adult relative's cellular plan. (R.1: Complaint, 9). The relative monitored Mercer-Kinser's daughter's phone activity, and saw concerning text messages from Mercer-Kinser. Mercer-Kinser's messages included his teachings that "there's nothing wrong with watching pictures and videos of kids doing sex stuff," "there's nothing wrong with looking at pictures of kids and videos of kids doing sex stuff," and "it's ok for adults and kids to do sex stuff as

4

long as nobody's getting hurt." (*Id.*, 13–14). He also told her that their "talks" were "super top secret," and directed her to delete their messages. (*Id.*, 14–15).

The relative contacted law enforcement, and provided a printout of the text messages to the FBI. (*Id.*, 9; R.85: Tr., 1212, 1218). After a representative from the halfway house took possession of Mercer-Kinser's smartphone, he ran down a freeway embankment into oncoming traffic. (R.1: Complaint, 17; R.79: PSR, 727 (¶21)). He was hit by a tractor-trailer, and sustained non-life threatening injuries. (*Id.*). Mercer-Kinser later admitted that he jumped in front of the truck in a suicide attempt because he did not want to go back to prison. (R.85: Tr., 1237; R.86: Tr., 1377).

While Mercer-Kinser was recovering at the hospital, the case agent conducted a preliminary analysis of his smartphone pursuant to a federal search warrant. (R.1: Complaint, 18). The phone included thousands of deleted items, including photos and internet bookmarks, that the agent was nevertheless able to recover with his forensic tools. (*Id.*). The agent found over 160 images depicting sexualized children. While not all of the images met the federal definition of child

5

pornography, several did. The agent described three of the images that he believed were illegal in an affidavit in support of a federal criminal complaint. (*Id.*, 18–19). Two of them depicted children having oral-genital contact with men. (*Id.*, 19). A third depicted a close up of a baby's bare vaginal area. (*Id.*, 18–19). The agent also described some deleted internet web forum bookmarks, including one titled "Raping Girls is Fun." (*Id.*, 20). The agent referred to this evidence as "jailbait" bookmarks in his affidavit. (*Id.*).

FBI agents arrested Mercer-Kinser immediately upon his release from the hospital. (R.85: Tr., 1226).

## B.    The district court denies Mercer-Kinser's pretrial motions.

A grand jury indicted Mercer-Kinser for receipt and possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(2) (count one) and § 2252A(a)(5)(B) (count two). (R.11: Indictment, 32–35).

Mercer-Kinser moved to exclude evidence of sexualized images of children that did not meet the federal definition of child pornography (sometimes known as "child erotica") and the "jailbait" bookmarks. (R.28: Motion to Exclude, 108–14). Mercer-Kinser conceded that the three images that the agent described in his affidavit "could possibly be

6

considered child pornography." (*Id.*, 112). But he argued that the balance of the images recovered were "akin to a child in a beauty contest" and should not be admitted. (*Id.*). He also argued that his internet bookmarks were "free speech." (*Id.*, 113).

The government countered that the three images described in the complaint affidavit were not the full universe of illegal images in the case, but just a representative sample, and that it was up to the jury to determine whether or not a particular image met the legal definition of child pornography. (R.29: Response, 116). In addition, the erotica and bookmark evidence was directly relevant to the government's proofs on the essential element of knowledge. (*Id.*).

The district court denied Mercer-Kinser's motion. (R.32: Order, 138–42). It concluded that "[t]hose images the government intends to offer in its case in chief as meeting the statutory definition of child pornography will not be excluded," because "the government bears the burden of proof on the question of whether they meet the definition, and the issue is for the jury." (*Id.*, 138). It also held that the "fact that Mr. Mercer-Kinser had some child erotica on his phone could be relevant to a jury's consideration of his knowledge and intent regarding the other

materials on his phone." (*Id.*, 139). The court was further "unpersuaded that, after being confronted with images that are alleged to meet the elements of child *pornography*, a jury would be unduly prejudiced by the introduction of evidence that is classified as child *erotica*." (*Id.*, 140). The government agreed to divide the images into two categories for trial, clearly separating the images offered in its case in chief as child pornography from the other, non-pornographic images of child erotica. (R.80: Tr., 761).

As for the bookmarks, the court found that "to the extent the names of the forum websites as shown in the bookmark links evince an interest in children for a sexual reason, they will not be excluded," again because "they are relevant to the elements of knowledge and intent." (R.32: Order, 142).

Two years after the motion cut-off, at Mercer-Kinser's insistence, defense counsel filed a 43-page motion to dismiss the indictment that Mercer-Kinser had handwritten. (R.45: Motion to Dismiss, 184–229). He alleged First Amendment violations. (*Id.*). The district court denied the motion. (R.51: Order, 245–47). It agreed with the government that the

motion was procedurally flawed in several respects. (*Id.*, 245–46). And substantively, it concluded that "Mercer-Kinser's arguments are foreclosed by existing precedent." (*Id.*, 246; R.88: Tr., 1518–21).

The district court also overruled Mercer-Kinser's pretrial objection concerning the admissibility of text messages between Mercer-Kinser and his daughter. The court reasoned that the messages were admissible as res gestae background evidence, and also separately under Rule 404(b). (R.88: Tr., 1530–32 (preliminary ruling); R.84: Tr., 940–41 (final ruling)).

## C.    The jury convicts.

At trial, the United States separated its evidence as promised, and presented the child pornography images individually, as Exhibits 1 through 7. This grouping included the three images that the case agent identified in his complaint affidavit (Exhibits 1, 2, and 6), plus four additional ones (Exhibits 3, 4, 5, and 7). Mercer-Kinser objected to the manner in which these seven exhibits were presented to the jury. (R.85: Tr., 1109, 1111). He thought they should be smaller in size. But he did not object to their admissibility. (*Id.*, 1202).

Exhibits 1 and 2 were sample images from the complaint affidavit that depicted female children licking a man's penis. (R.85: Tr., 1204; R.79: PSR, 727 (¶ 23)). Exhibit 7 depicted "a young female" with "a penis beside her face." (R.85: Tr., 1206; R.79: PSR, 727 (¶ 23)). Exhibits 3 through 6 depicted the lascivious display of the genitals of young girls. (R.85: Tr., 1204–06; R.79: PSR, 727 (¶ 23)). Exhibit 6 was the third sample image from the complaint affidavit; it depicted a baby victim's bare vaginal area. (R.85: Tr., 1206; R.79: PSR, 727 (¶ 23)).

During his testimony, the case agent explained that the National Center for Missing and Exploited Children returned a positive identification for Exhibit 6 as a known image from its database. (R.85: Tr., 1206). The mother of the victim in Exhibit 6 flew from Vancouver to Detroit to testify. (*Id.*, 1113). She confirmed that the victim in Exhibit 6 was her daughter, that the photo was taken by the victim's biological father in Canada, and that the victim's images have continued to circulate on the internet since the perpetrator's arrest more than a decade prior. (*Id.*, 1208–11).

The case agent also provided important technical testimony concerning his forensic analysis of Mercer-Kinser's phone. (*Id.*, 1113).

10

The Kyocera smartphone had the capacity to access the internet, send and receive text messages, and take screenshots. (R.85: Tr., 1166, 1173, 1190). Due to house rules at the residential reentry center, the phone's camera had been punched out and was inoperable. (*Id.*, 1166; R.86: Tr., 1322–24). That meant that any photo on the device necessarily came from the internet or from a message from another person, such as via text or email.

The universe of data recovered from the phone spanned approximately four months, from mid-July to October 10, 2019. (R.85: Tr., 1178). In that time, the phone had connected to at least 25 wireless networks. (*Id.*, 1179).

The agent explained how the FBI's extraction tools can provide forensic evidence and file paths for photos that the user tried to delete. (*Id.*, 1189). He testified about DCIM, which stands for Digital Camera Image. (*Id.*, 1189–90). DCIM is a way to store photographs. (*Id.*, 1190). An image can appear in a phone's DCIM file path in a couple different ways. (*Id.*, 1190). If someone takes a picture with the phone's camera, or downloads a picture from the internet, or receives a picture via text message and saves it to his photo gallery, or takes a screenshot of

something on the internet, then the picture shows up in the DCIM.
(*Id.*). There is no way for an image to accidentally end up in the DCIM,
because "some kind of affirmative step" is required. (*Id.*, 1191). The
agent explained that if "it's in the DCIM, then the user at the very
minimum saw that picture," because it "either passed through the
gallery or it was a photograph that was taken with the camera of that
phone." (*Id.*).

All seven of the child pornography images contained a file path
through the DCIM. (*Id.*, 1203). That meant that all seven passed
through Mercer-Kinser's photo gallery. For that to be the case, an
affirmative step was required—such as "tak[ing] the picture with the
phone or plac[ing] it into the gallery intentionally"—either by
"downloading the file from the internet and saving it," or by "receiving
it through a different app and saving it to the phone." (*Id.*, 1203–04). In
other words, every image on Mercer-Kinser's phone with a DCIM file
path got to his photo gallery "intentionally," and "not by accident." (*Id.*,
1204).

The agent explained how he recovered some deleted
communications between Mercer-Kinser and his friend Nate. (*Id.*,

1182). In one, Nate asked Mercer-Kinser: "does cp have antidepressant qualities?" (*Id.*, 1183). Mercer-Kinser responded: "I think so. It makes ME happy anyway." (*Id.*, 1183; R.89: Ex. 11C, 1567). Then Mercer-Kinser continued: "It's like the methadone to the heroine [sic] of getting your dick sucked by a 13 yo while watching cp." (*Id.*, 1183–84; R.89: Ex. 11C, 1567). In another message about a week later, Mercer-Kinser told his friend Becky that he was "gonna be watching porn, and surfing Twitter looking at sexy pictures of little girls, and masturbating." (*Id.*, 1185; R.89: Ex. 11C, 1569). In other messages, Mercer-Kinser recommended that Nate "definitely" needed to "zoom in" on certain images that were small. (R.85: Tr., 1267).

The agent also testified about an excerpt from the forensic report, listing the names of 13 deleted bookmarks recovered from Mercer-Kinser's phone, that was admitted as Exhibit 11D. (*Id.*, 1188–89). Despite his prior motion seeking to exclude such evidence, Mercer-Kinser did not object to the admission of Exhibit 11D at trial. (*Id.*, 1171).

The government presented its child erotica evidence separately from the child pornography evidence, at Exhibit 11E. (R.85: Tr., 1196).

Before presenting the evidence, during opening statements, one of the prosecutors explained to the jurors that they were "going to see two types of images." (*Id.*, 1136). She explained that some were "categorized as images of children who have been sexualized for the camera" in the "way they're dressed or how they're posed," and that the "law sometimes refer to this as child erotica," but clarified that the government was not presenting those erotica images as illegal child pornography. (*Id.*).

Pursuant to Rule 414, the United States also presented propensity evidence concerning Mercer-Kinser's prior felony conviction for transportation of child pornography. (*Id.*, 1221–26). Mercer-Kinser did not challenge this evidence, and the parties even agreed on a jury instruction concerning it. Nor did Mercer-Kinser challenge the admission of evidence concerning his suicide attempt to show his consciousness of guilt. The parties agreed on a jury instruction for that evidence as well.

The district court also admitted Exhibit 16—handwritten papers found in Mercer-Kinser's possession when he was arrested. (*Id.*, 1233–36). These papers included notes about cases involving other defendants

convicted for child exploitation crimes. (*Id*., 1234; R.89: Ex. 16, 1572–74). The notes gave "information about the ages of the victims, in some cases the types of offense, as well as ways that these images and videos were distributed on the internet." (R.85: Tr., 1234). The papers also list several "former CP sites," such as "CPfreedom.com" and "Lustgallery.com." (R.89: Ex. 16, 1573, 1574). According to Mercer-Kinser's notations, one of the sites that he wanted to keep track of depicts images including rape and bondage and "drugged young girls." (R.85: Tr., 1235; R.89: Ex. 16, 1574).

The relative who reported Mercer-Kinser and his text messages to the FBI testified too. The relative explained that Mercer-Kinser's daughter was on the relative's Verizon phone plan. (R.86: Tr., 1291). The relative was able to read the messages between Mercer-Kinser and his daughter by logging into her Verizon account, and eventually provided copies of the message log to the FBI. (*Id*., 1292, 1295).

During the relative's testimony, the district court admitted select text messages between Mercer-Kinser and his daughter into evidence, as res gestae and under Rule 404(b). (*Id*., 1295–96, 1422). The messages were divided into three vignettes. The first, Exhibit 8A, was from July

28, 2019. Mercer-Kinser explained that "by [his] rules, you can do anything you want, as long as it's not hurting anybody"—"even what [he] did that [he] went to prison for." (*Id.*, 1298–99; R.89: Ex. 8A, 1558). The next vignette, Exhibit 8B, was from July 31. Mercer-Kinser asked his daughter if he made her "uncomfortable" because their "conversations were about sex-stuff," and wondered whether it "bother[ed] [her] to talk to [him] about sex," even though he's "a guy" and she "knows about [his] orientation." (R.86: Tr., 1300; R.89: Ex. 8B, 1560). The last vignette, Exhibit 8C, was from her 10th birthday, on August 5. (R.86: Tr., 1300). He explained that "there's nothing wrong with watching pictures and videos of kids doing sex stuff," "there's nothing wrong with looking at pictures of kids and videos of kids doing sex stuff," and "it's ok for adults and kids to do sex stuff as long as nobody's getting hurt." (*Id.*, 1302–03; R.89: Ex. 8C, 1561, 1563–64). He told her that their "talks are super top secret," and directed her to "erase the conversation" so "nobody can read it." (R.86: Tr., 1304; R.89: Ex. 8C, 1565).

At the close of the government's proofs, Mercer-Kinser made an oral motion for a judgment of acquittal under Rule 29. (R.86: Tr., 1352).

He argued that the government's evidence was insufficient to establish that he acted knowingly. (*Id.*, 1352 & 1355). The district court denied the motion. It explained that it had "reviewed the evidence in this case and listened while the witnesses were testifying." (*Id.*, 1355). The court held that "the evidence is sufficient so that a reasonable person could find beyond a reasonable doubt that the defendant received the child pornography" that was "identified as" admitted Exhibits 1 through 7. (*Id.*). More specifically, the court explained that the "images themselves do appear [] to be sufficiently either involving a sex act or involving the lascivious exhibition of the genitals of the child so that they would meet the definition of child pornography." (*Id.*, 1355–56). The court also discussed the DCIM evidence. It noted that the agent "did identify that these images were on a certain path in the phone that would have required some kind of activity by the user of the phone for the images to be there in the path that they were in, whether it was by taking a picture or a screenshot of a screen or downloading from the internet." (*Id.*, 1356). It held that "a reasonable person could use and rely upon that testimony as a basis for action and conduct on behalf of the defendant that would have caused him to receive [] those images." (*Id.*).

17

The court also held that evidence from "text messages and some of the other messages that were found on the phone" demonstrated Mercer-Kinser's "prior knowledge and interest in child pornography," such that "a reasonable juror could conclude that" the presence of "these images on his phone was not merely accidental or by chance," but instead was "intentional." (*Id*.). Finally, the court found sufficient evidence of interstate nexus. (*Id*.). The court did not mention bookmarks or child erotica in its analysis.

Mercer-Kinser testified. He admitted that he had "a sexual fetish" of "being into children." (R.86: Tr., 1407). He also confirmed that he was trying to commit suicide when he ran onto the freeway because he "didn't want to go back to prison." (*Id*., 1377).  Defense counsel then "re-rais[ed]" the prior Rule 29 motion, "in light of the testimony of the defendant," and asked the court to reserve its ruling until after the jury returned its verdict. (*Id*., 1422).

The jury convicted Mercer-Kinser on count one. (R.57: Verdict Form, 321). It specifically found that he was guilty of receipt of child pornography with respect to each of the seven images presented:

18

☑ Guilty of receipt of child pornography with respect to the following images:

    ☑ Exhibit #1
    ☑ Exhibit #2
    ☑ Exhibit #3
    ☑ Exhibit #4
    ☑ Exhibit #5
    ☑ Exhibit #6
    ☑ Exhibit #7

(*Id.*).

Because possession was a lesser included offense of receipt, the jury was not required to deliberate on count two. (R.86: Tr., 1467). The court reiterated its denial of relief under Rule 29, "based on the analysis of the facts that [the court] previously stated on the record" during its original ruling. (R.87: Tr., 1502).

The district court sentenced Mercer-Kinser within the guidelines, to 188 months. (R.76: Judgment, 680; R.81: Sent. Tr., 817, 835).

Mercer-Kinser appealed. (R.74: Notice of Appeal, 676).

# Summary of the Argument

Mercer-Kinser has not established any basis to overturn his conviction for receiving child pornography.

First, this Court should affirm the denial of Mercer-Kinser's motion for judgment of acquittal. He waived his sufficiency argument because his grounds on appeal are different from his grounds in the district court. His guilty verdict was amply supported by the evidence anyway. The images at issue depicted children engaged in either sex acts or lascivious display of the genitals. He does not contest the element concerning interstate or foreign nexus. And he acted knowingly too. Forensic evidence from the DCIM files paths on his phone established that he saved the child pornography to his photo gallery intentionally, and did not come about the illegal images by mistake or accident. He made various admissions about his sexual interest in children to his preteen daughter and other friends, and in handwritten notes recovered at the time of his arrest. His prior child pornography conviction was admissible propensity evidence under Rule 414 as well. After viewing all of this evidence in the light most favorable to the

prosecution, any rational trier of fact could have found the essential elements of receipt beyond a reasonable doubt.

Next, the district court acted within its discretion in admitting text messages between Mercer-Kinser and his daughter. This evidence is directly relevant to the res gestae of the case because the messages share temporal proximity with the period alleged in the indictment, and also have a direct causal relationship to the FBI's investigation of Mercer-Kinser's crimes. The evidence is also admissible under Rule 404(b) to show intent, absence of mistake, or absence of accident. And because there was ample evidence to support the conviction, any error was harmless.

Finally, the district court correctly denied Mercer-Kinser's motion to dismiss the indictment. Child pornography is not protected under the First Amendment, and the statute criminalizing receipt of child pornography includes a sufficient scienter requirement concerning the nature and character of the proscribed materials.

# Argument

I. **This Court should affirm the denial of Mercer-Kinser's motion for judgment of acquittal.**

A. **Mercer-Kinser's new sufficiency argument on appeal is waived.**

During trial, Mercer-Kinser limited his Rule 29 motion to the knowledge element. His attorney argued that "there was [not] sufficient evidence to prove that he knowingly viewed child pornography," and that she did not believe that the United States could "prove this beyond a reasonable doubt knowingly." (R.86: Tr., 1352, 1355).

But his argument on appeal is different. Now, Mercer-Kinser argues that "there was insufficient evidence to find the defendant guilty of the crime of receipt of child pornography" because the "district court made erroneous rulings on several pretrial motions," and as "a result of the district court's erroneous rulings, evidence was allowed to be presented to the jury that should have been excluded." (Def. Br. at 9). More specifically, he complains about the erotica and bookmark evidence. (*Id.*). But he did not raise a claim concerning either type of evidence during his sufficiency argument below. (R.86: Tr., 1352–55).

22

"On appeal, he may not challenge the sufficiency of the evidence on grounds different than those he asserted in district court." *United States v. Jankowski*, No. 23-1404, 2024 WL 4554690, at *2 (6th Cir. Oct. 23, 2024); *see also United States v. Chance*, 306 F.3d 356, 369 (6th Cir. 2002) ("Although specificity in a Rule 29 motion is not required, where the defendant makes a Rule 29 motion on specific grounds, all grounds not specified in the motion are waived."); *United States v. Porter*, 886 F.3d 562, 566 (6th Cir. 2018) (same).

In other words, Mercer-Kinser "waived the argument he now seeks to make on appeal." *Jankowski*, 2024 WL 4554690, at *2.

### B.    The United States presented sufficient evidence to support Mercer-Kinser's conviction.

Because Mercer-Kinser waived his sufficiency argument, this Court's examination should end here. But if this Court continues its analysis, Mercer-Kinser nevertheless falls far short.

As this Court recently explained, "[r]eversal on insufficiency of the evidence is a difficult standard for a defendant to meet." *United States v. Rolling*, No. 23-1045, 2024 WL 4512532, at *8 (6th Cir. Oct. 17, 2024). Although the standard of review is *de novo*, "a defendant claiming

insufficiency of the evidence" nonetheless "bears a very heavy burden," *United States v. Wright*, 774 F.3d 1085, 1088 (6th Cir. 2014), and "faces a high bar," *United States v. Persaud*, 866 F.3d 371, 380 (6th Cir. 2017).

The question is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Wright*, 774 F.3d at 1088. "All reasonable inferences must be made to support the jury verdict." *United States v. LaVictor*, 848 F.3d 428, 456 (6th Cir. 2017). What's more, "[c]ircumstantial evidence alone is sufficient to sustain a conviction[.]" *Id*. Importantly, when considering the sufficiency of the evidence, this Court cannot "reweigh the evidence, reevaluate the credibility of witnesses, or substitute [its] judgment for that of the jury." *United States v. Emmons*, 8 F.4th 454, 478 (6th Cir. 2021); *see also United States v. Martinez*, 430 F.3d 317, 330 (6th Cir. 2005).

Here, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found that Mercer-Kinser received child pornography beyond a reasonable doubt. "Section 2252A(a)(2)(A) punishes the knowing receipt [] of 'any child

24

pornography that has been mailed, or using any means or facility of interstate or foreign commerce shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.'" *United States v. Daniels*, 653 F.3d 399, 408 (6th Cir. 2011).

Start with the images themselves. Contrary to Mercer-Kinser's assertion that the district court "refused/failed to review the images" (Def. Br. at 13), the court explained that it had "reviewed the evidence in this case and listened while the witnesses were testifying," and confirmed that the "images themselves do appear [] to be sufficiently either involving a sex act or involving the lascivious exhibition of the genitals of the child so that they would meet the definition of child pornography." (R.86: Tr., 1355–56). Notably, during pretrial briefing, Mercer-Kinser conceded that the three images that the agent described in his affidavit "could possibly be considered child pornography." (R.28: Motion, 112). That's enough under Rule 29. Moreover, although Mercer-Kinser objected to the size of the images published to the jury, he did not object to their admissibility. (R.85: Tr., 1202).

Next, any rational trier of fact could have found that Mercer-Kinser acted knowingly. It is well-settled that "knowledge of the

25

contents of material 'may be proven by circumstantial evidence.'"
*United States v. Hentzen*, 638 F. App'x 427, 431 (6th Cir. 2015) (quoting
*United States v. Kussmaul*, 987 F.2d 345, 350 n.4 (6th Cir. 1993)).

The agent's testimony concerning the DCIM file path evidence is significant on this point. He explained that each of the seven images at issue was found in the DCIM file path on Mercer-Kinser's phone. That evidence established that Mercer-Kinser did not accidentally come across those images, but rather took an affirmative step to save them to his device. As the district court explained in denying the Rule 29 motion, the agent "did identify that these images were on a certain path in the phone that would have required some kind of activity by the user of the phone for the images to be there in the path that they were in, whether it was by taking a picture or a screenshot of a screen or downloading from the internet." (R.86: Tr., 1356). The court concluded that "a reasonable person could use and rely upon that testimony as a basis for action and conduct on behalf of the defendant that would have caused him to receive [] those images." (*Id.*).

That forensic evidence was wholly consistent with Mercer-Kinser's own admissions about his appetite for the sexual exploitation of

children. In his messages to his daughter, he discussed the appropriateness of kids and adults doing "sex stuff" during the same timeframe alleged in the indictment. Likewise, he told his friend Nate that child pornography "was like the methadone to the heroine [sic] of getting your dick sucked by a 13 yo while watching cp." (R.85: Tr., 1183–84; R.89: Ex. 11C, 1567). He told Becky that he was "gonna be watching porn, and surfing Twitter looking at sexy pictures of little girls, and masturbating." (*Id.*, 1185; R.89: Ex. 11C, 1569). And his own handwritten notes contained references to child pornography websites. (R.89: Ex. 16, 1572–74). Under Rule 414, evidence of his prior child pornography conviction was admissible propensity evidence. And other circumstantial evidence demonstrated Mercer-Kinser's consciousness of guilt too. He had a regular practice of deleting things from his phone. He admitted that he was going to have to try to "outsmart" his probation officer for "ten long years" after he was released from the halfway house. (R.85: Tr., 1187; R.89: Ex. 11C, 1571). Then, he ran into traffic to avoid going back to prison.

Last, Mercer-Kinser has never even arguably challenged the fact that he received the images using any means or facility of interstate or

27

foreign commerce. The image from Exhibit 6, a photo taken in Canada, necessarily crossed an international border to arrive on Mercer-Kinser's device. Plus, Mercer-Kinser's smartphone not only had internet connectivity—the evidence established that it had connected to at least 25 wireless networks during the timeframe alleged in the indictment. (R.85: Tr., 1166, 1179). The internet is a facility of interstate commerce. *See*, *e.g.*, *United States v. Roman*, 795 F.3d 511, 516 (6th Cir. 2015); *United States v. Clark*, 24 F.4th 565, 575 (6th Cir. 2022). So is a cellular phone. *See*, *e.g.*, *Roman*, 795 F.3d at 516; *United States v. Weathers*, 169 F.3d 336, 341 (6th Cir. 1999).

The elements of the offense are easily satisfied here—even without any consideration of the bookmarks or erotica images. Notably, the district court did not reference either type of evidence when it denied Mercer-Kinser's Rule 29 motion. (R.86: Tr., 1355–57). Nor does any alternative explanation that Mercer-Kinser offers change the analysis. As this Court explained in *Hentzen*, a "rational jury could have believed him and decided to acquit. But this jury did not, and we must 'not reweigh the evidence, reevaluate the credibility of witnesses, or substitute our judgment for that of the jury.'" *Hentzen*, 638 F. App'x at

432 (quoting *Martinez*, 430 F.3d at 330); *see also United States v. Hall*, 202 F.3d 270 (6th Cir. 2000) (affirming denial of motion for judgment of acquittal in receipt case where defendant "testified that he only intended to possess legal pornography, but had no intent to possess illegal pornography," in part because that explanation "was a credibility determination, which we will not disturb on appeal").

Consistent with *Hentzen* and *Hall*, this Court should affirm the district court's denial of Mercer-Kinser's motion for judgment of acquittal.

## II. The district court acted within its discretion in admitting text messages between Mercer-Kinser and his preteen daughter.

The district court properly admitted select text messages between Mercer-Kinser and his daughter—first as res gestae evidence, and alternatively under Rule 404(b). (R.84: Tr., 940). This Court reviews for abuse of discretion. *See Martinez*, 430 F.3d at 335 (res gestae); *United States v. Hardy*, 643 F.3d 143, 153 (6th Cir. 2011) (404(b)).

### A. The messages were admissible as res gestae evidence.

First of all, the messages were admissible as background, or res gestae, evidence. "Background evidence is a narrow category of evidence

29

that typically provides context for the jury, either because it is directly probative, acts as a prelude to the offense or arises from the same events, forms an integral part of a witness's testimony, or completes the story of the offense." *United States v. De Oleo*, 697 F.3d 338, 344 (6th Cir. 2012) (affirming admissibility of evidence of other fraudulent clinics as "background evidence"). As this Court explained in *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000), "background or res gestae evidence consists of those other acts that are inextricably intertwined with the charged offense or those acts, the telling of which is necessary to complete the story of the charged offense."

This Court has "recognized that 'background' or 'res gestae' evidence does not implicate Rule 404(b)." *Martinez*, 430 F.3d at 335. The test for admissibility of res gestate evidence concerns "temporal proximity, causal relationship, or special connections." *Hardy*, 228 F.3d at 749; *see also United States v. Clay*, 667 F.3d 689, 697 (6th Cir. 2012). The text message evidence here easily meets these requirements. The indictment alleged that Mercer-Kinser received the images between mid-July 2019 (when he acquired the phone) and mid-October 2019 (when the phone was seized). His messages with his daughter occurred

30

within this window, and thus share temporal proximity. His statements concerned his continued sexual interest in children—and prompted a concerned relative to contact law enforcement because she feared that Mercer-Kinser was "grooming" her young niece and a family friend for child exploitation. In other words, the messages established how the investigation began, and completed the story of the charged offense.

Mercer-Kinser has no answer to the res gestae argument. He merely reiterates his unsupported conclusion that the messages are not "inextricably intertwined with the allegations of receipt of child pornography." (Def. Br. at 23). But as the district court correctly explained, "this information is directly relevant to the res gestae of the case because it is what led to the investigation and the ultimate seizure of the phone and the ultimate seizure of the child pornography." (R.88: Tr., 1530). Admission of this evidence as res gestate was not an abuse of discretion.

**B.    The messages were also admissible under Rule 404(b) to show intent, absence of mistake, or absence of accident.**

Alternatively, the district court properly admitted Mercer-Kinser's text messages as other act evidence under Rule 404(b).

First, Mercer-Kinser does not contest that the other act actually occurred. He expressly acknowledges the "text communications between the defendant and his minor daughter" in his brief on appeal. *See* Def. Br. at 20.

Second, the district court properly determined that the messages were legally admissible and relevant for a legitimate purpose—Mercer-Kinser's intent, as well as lack of mistake or accident. Before trial, Mercer-Kinser put this evidence at issue when he claimed that he "never intended to receive or possess" child pornography, and that he "sought only legal child erotica." (R.45: Motion to Dismiss, 211–13). In the text messages to his minor daughter, though, Mercer-Kinser set forth his philosophy that: "by [his] rules, you can do anything you want, as long as it's not hurting anybody"—"even what [he] did that [he] went to prison for," "there's nothing wrong with watching pictures and videos of kids doing sex stuff," "there's nothing wrong with looking at pictures of kids and videos of kids doing sex stuff," and "it's ok for adults and kids to do sex stuff as long as nobody's getting hurt." (R.86: Tr., 1298–1303; R.89: Exs. 8A & 8C, 1558, 1561–64). Those admissions showed that Mercer-Kinser intended to use his smartphone to search for and

receive images of child pornography during the period alleged in the

indictment, and that he did not come by the child pornography by

mistake or accident. What's more, although thousands of text messages

between Mercer-Kinser and his daughter existed, the government only

introduced a small portion in its case-in-chief. (R.86: Tr., 1309). Mercer-

Kinser introduced some messages too. (*Id.*, 1307, 1314). And although

he points to *United States v. Edwards*, 813 F.3d 953 (10th Cir. 2015),

that's a case about probable cause, not Rule 404(b). (Def. Br. at 14).

Third, the probative value of the text message evidence was not

substantially outweighed by the danger of unfair prejudice. The

probative value was strong. During the same time period alleged in the

indictment, Mercer-Kinser repeatedly and readily admitted his views

that it was entirely appropriate for adults and children to engage in sex

acts. The danger of unfair prejudice, in contrast, was low. The jury here

was necessarily required to view highly disturbing images of child

pornography. In the face of that evidence, it is unlikely that the jury

was unfairly prejudiced by the introduction of evidence of Mercer-

Kinser's words. What's more, in his objection to this evidence, Mercer-

Kinser referred to his remarks as "[m]ere discussion of philosophy."

33

(R.49: Response to 404(b) Notice, 240). Likewise on appeal, he characterizes the messages as "merely a discussion between a father and his daughter." (Def. Br. at 20). Mercer-Kinser used the same theme during trial, claiming that "it's language" and "speech," and he's "entitled to free speech." (R.86: Tr., 1453–54). He has failed to establish how admission of a mere discussion of philosophy and an exchange of ideas unfairly prejudiced him.

In addition, Mercer-Kinser's "once a drug dealer, always a drug dealer" propensity argument doesn't make sense on the facts of our case. (Def. Br. at 22). The other act at issue is Mercer-Kinser's dissemination of text messages. Those messages are not propensity evidence—they are evidence of Mercer-Kinser's state of mind. *See*, *e.g.*, *Hall*, 202 F.3d 270 ("This evidence was offered merely to demonstrate [the defendant's] state of mind and not his conduct."). Conversely, evidence of Mercer-Kinser's prior child pornography conviction *is* unquestionably propensity evidence. But it is a type of propensity evidence that Rule 414 expressly permits in child exploitation cases. And so, comparison to drug cases involving prior drug sales is inapt.

34

Nor can Mercer-Kinser establish any "jury confusion." (Def. Br. at 21). "Limiting instructions are one factor that the district court can consider in conducting a 403 balancing test for other acts evidence." *United States v. De Oleo*, 697 F.3d 338, 344 (6th Cir. 2012); *see also, e.g.*, *United States v. Hardy*, 643 F.3d 143, 153 (6th Cir. 2011). The district court here instructed the jury that it could consider the evidence "only as it relates to the government's claim on the defendant's intent, absence of mistake or absence of accident," and it admonished the jury that it "should not consider it for any other purpose." (R.86: Tr., 1473). It further cautioned the jury to "[r]emember that the defendant is on trial here only for the crimes alleged in the indictment, not for the other acts." (*Id.*). Jurors are presumed to follow instructions. *See United States v. Harvey*, 653 F.3d 388, 396 (6th Cir. 2011). These instructions were sufficient to prevent unfair prejudice to Mercer-Kinser. *See, e.g.*, *De Oleo*, 697 F.3d at 344.

## C.    Any error was harmless.

If this Court nonetheless disagrees with the evidentiary ruling, the error was harmless. The DCIM evidence established that all seven child pornography images got to Mercer-Kinser's photo gallery

35

"intentionally" and "not by accident." (R.85: Tr., 1204). Mercer-Kinser made consistent remarks about his appetite for the sexual exploitation of children in messages to Nate and Becky. (*Id.*, 1183–85; R.89: Ex. 11C, 1567–68). His prior child pornography conviction was admissible as propensity evidence under Rule 414. And he readily divulged his sexual fetish for children during trial. (R.86: Tr., 1407). Because the ruling did not affect the outcome of the trial, reversal is unwarranted. *See United States v. Marrero*, 651 F.3d 453, 471 (6th Cir. 2011); *see also De Oleo*, 697 F.3d at 344 (holding that "any error here was harmless" because there "was ample evidence to support" the conviction).

## III.  The district court correctly denied the motion to dismiss the indictment on free speech grounds.

"Not all speech, whether verbal or visual, receives First Amendment protection." *Doe v. Boland*, 698 F.3d 877, 883 (6th Cir. 2012). It is well-settled that child pornography "is unprotected by the First Amendment." *New York v. Ferber*, 458 U.S. 747, 764 (1982). As this Court explained in *Boland*, "[o]bscenity, defamation, fraud, incitement and solicitation of crime are all examples of communication for which the speaker must take responsibility and from which the First

36

Amendment offers no sanctuary. Child pornography is the same." *Id*.
(internal citations omitted).

That is because the "'evil' of child pornography 'so overwhelmingly
outweighs the expressive interests, if any, at stake' in this form of
communication that it lies categorically beyond constitutional
protection, meaning that 'no process of case-by-case adjudication is
required' to uphold restrictions on it." *Id*. (quoting *Ferber*). What's more,
the "rationale is straightforward: Governments have a compelling
interest in protecting children from abuse, the value of using children in
pornography is non-existent, and the market for child pornography is
'intrinsically related' to the underlying abuse." *Ferber*, 458 U.S. at 759.
For all of these reasons, "a free-speech challenge to a criminal [] penalty
imposed for actual child pornography" is "easy to reject." *Boland*, 698
F.3d at 883.

Mercer-Kinser's free speech challenge is easy to reject too. The
standard of review is de novo. *See United States v. Brown*, 25 F.3d 307,
308 (6th Cir. 1994). Although his exact argument is difficult to pinpoint,
the thrust seems to be that the statute that prohibits receiving child

pornography has improperly chilled his consumption of legal child erotica. (Def. Br. at 24–25).

But that's not quite right. To help prevent the prosecution and conviction of inadvertent recipients of illicit materials, the federal child pornography statutes include the term "knowingly" in defining the offenses prohibited by 18 U.S.C. §§ 2252 and 2252A. In *United States v. Brown*, 25 F.3d 307, 310 (6th Cir. 1994), this Court explained that "in concluding that § 2252(a)(2) incorporates a scienter requirement as to the character of the materials involved, we join the majority of the courts of appeals that have addressed the constitutionality of § 2252 and the sufficiency of the statute's knowledge requirement." The same logic applies to Mercer-Kinser's statute of conviction: § 2252A(a)(2). And as the district court explained, his "argument that the statute's language does not adequately ensure he will not be convicted without proof that he knew he received [] child pornography has been rejected by the Sixth Circuit in *United States v. Brown*, 25 F.3d 307 (6th Cir. 1994)." (R.51: Order, 246).

Mercer-Kinser's attempt to distinguish *Brown* as a case involving a facial challenge falls flat. (Def. Br. at 26). The statute is constitutional

as applied to Mercer-Kinser too. The government was required to prove, beyond a reasonable doubt, that Mercer-Kinser acted with the requisite knowledge and intent to receive child pornography. The government was also required to prove that the images at issue depicted illegal child pornography and not legal erotica. As evidenced by the jury's guilty verdict, it did just that.

Indeed, his argument on appeal seems to be less about the legality of his indictment than it is about the admission of other evidence that he claims is "protected under the First Amendment as well as the constitutional right to association." (Def. Br. at 27). He focuses yet again on the text messages with his daughter, his "activities in a constitutionally protected free speech internet web forum bookmark," the child erotica images, and his "protected free speech involving the subject matter of various sexual behaviors." (*Id*. at 26–27). But these are not challenges to the legality of the indictment or the constitutionality of § 2252A(a)(2). Nor does the First Amendment throw the rules of evidence overboard. *See*, *e.g.*, *United States v. Curtin*, 489 F.3d 935, 953–54 (9th Cir. 2007) (en banc) ("[T]he Supreme Court has held on many occasions in other contexts that opinions and other

39

information that otherwise might be entitled to First Amendment protection are not immune from discovery and use as evidence in court, as long as they are relevant to an issue in a given case.") As his own attorney explained during opening statements, "what this case comes down to is one issue, one strong question, did he knowingly receive or possess child porn." (R.85: Tr., 1140). The various admissions and associations that Mercer-Kinser seeks to shield were directly relevant to that central question.

## Conclusion

The judgment should be affirmed.

                              Respectfully submitted,

                              Dawn N. Ison
                              United States Attorney


                              /s/ Erin S. Shaw
                              Erin S. Shaw
                              Assistant United States Attorney
                              Eastern District of Michigan
                              211 West Fort Street, Suite 2001
                              Detroit, MI 48226
                              (313) 226-9182
                              erin.shaw@usdoj.gov

Dated: December 18, 2024

## Certificate of Compliance with Rule 32(a)

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the brief exempted by Rule 32(f), it contains 7,478 words. This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook.

/s/ Erin S. Shaw
Assistant United States Attorney

Dated: December 18, 2024

41

# Certificate of Service

I certify that on December 18, 2024, I caused this Brief for the United States to be electronically filed with the Clerk of the United States Court of Appeals for the Sixth Circuit using the ECF system, which will send notification of the filing to the following attorney of record:

David W. Camp, david@campattorney.net

/s/ Erin S. Shaw
Assistant United States Attorney

42

# Relevant District Court Documents

The United States of America designates as relevant these documents in the district court's electronic record, Eastern District of Michigan case number 19-cr-20772:

| Record No. | Document Description | Page ID Range |
|---|---|---|
| 1 | Complaint | 1–21 |
| 11 | Indictment | 32–36 |
| 28 | Motion to Exclude | 108–15 |
| 29 | Response | 116–32 |
| 32 | Order | 138–42 |
| 45 | Motion to Dismiss | 184–229 |
| 49 | Response to 404(b) Notice | 239–41 |
| 51 | Order | 245–47 |
| 57 | Verdict Form | 321–22 |
| 74 | Notice of Appeal | 676 |
| 76 | Judgment | 679–85 |
| 79 | Presentence Report | 719–49 |
| 80 | Motion Hearing Transcript | 750–79 |
| 81 | Sentencing Transcript | 780–842 |
| 84 | Trial Transcript, Volume I | 936–1105 |
| 85 | Trial Transcript, Volume II | 1106–279 |

| Record No. | Document Description | Page ID Range |
|---|---|---|
| 86 | Trial Transcript, Volume III | 1280–488 |
| 87 | Trial Transcript, Volume IV | 1489–504 |
| 88 | Pretrial Conference Transcript | 1505–52 |
| 89 | Notice of Filing Exhibits | 1553–74 |
| | Exhibit 8 | 1556–66 |
| | Exhibit 11C | 1567–71 |
| | Exhibit 16 | 1572–74 |